# 14-826-cv(L)

14-832-cv(Con)

# United States Court of Appeals
*for the*
# Second Circuit

CHEVRON CORPORATION,

*Plaintiff-Appellee*,

- v. -

STEVEN R. DONZIGER, THE LAW OFFICES OF STEVEN R. DONZIGER, DONZIGER & ASSOC. PLLC, HUGO GERARDO CAMACHO NARANJO, AND JAVIER PIAGUAJE PAYAGUAJE,

*Defendants-Appellants*.

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

**CHEVRON CORPORATION'S OPPOSITION TO THE REPUBLIC OF ECUADOR'S MOTIONS FOR LEAVE TO FILE OVERSIZED BRIEF AS *AMICUS CURIAE* (DKT. 112) AND FOR JUDICIAL NOTICE OF APPENDIX CONTENTS (DKT. 113)**

GIBSON, DUNN & CRUTCHER LLP
*Attorneys for Plaintiff-Appellee*
*Chevron Corporation*
200 Park Avenue
New York, New York 10166
(212) 351-4000

## TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ..................................................................................1

ARGUMENT ..............................................................................................................2

    I.    The Motions Are Procedurally Improper ................................................2

        A.    The Motions Are Untimely .......................................................2

        B.    The Proposed *Amicus* Brief and Appendix Improperly Seek to Introduce Arguments and Evidence Not Before This Court ........................................................................................3

    II.    The ROE's Proposed *Amicus* Brief Fails to Address Issues Relevant to the Issues on Appeal ........................................................11

CONCLUSION ........................................................................................................14

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. City of Bessemer City, N.C.*,
  470 U.S. 564 (1985) ..............................................................................14

*Bano v. Union Carbide Corp.*,
  273 F.3d 120 (2d Cir. 2001) ............................................................. 3, 4, 8

*Bogle-Assegai v. Connecticut*,
  470 F.3d 498 (2d Cir. 2006) ..................................................................... 4

*Chevron Corp. v. Donziger*,
  974 F. Supp. 2d 362 (S.D.N.Y. 2014) ....................................................... 8

*Chevron Corp. v. Donziger*,
  974 F. Supp. 362 (S.D.N.Y. 2014) ..........................................................10

*Crawford v. Lungren*,
  96 F.3d 380 (9th Cir. 1996) ....................................................................... 8

*FTC v. Phoebe Putney Health Sys., Inc.*,
  133 S. Ct. 1003 (2013) ............................................................................. 4

*Int'l Bus. Machs. Corp. v. Edelstein*,
  526 F.2d 37 (2d Cir. 1975) ....................................................................... 5

*Krist v. Kolombos Rest. Inc.*,
  688 F.3d 89 (2d Cir. 2012) ......................................................................14

*Marino v. Ortiz*,
  484 U.S. 301 (1988) ................................................................................12

*Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.*,
  190 F.3d 64 (2d Cir. 1999) ......................................................................13

*Newman v. Local 1101, Commc'n Workers of Am., AFL-CIO*,
  597 F.2d 833 (2d Cir. 1979) ....................................................................13

*Olmstead v. Pruco Life Ins. Co.*,
  283 F.3d 429 (2d Cir. 2002) ..................................................................... 4

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
  464 U.S. 417 (1984) ................................................................................. 12

*Tiffany (NJ) Inc. v. eBay, Inc.*,
  600 F.3d 93 (2d Cir. 2010) ....................................................................... 13

*Universal City Studios, Inc. v. Corley*,
  273 F.3d 429 (2d Cir. 2001) ...................................................................... 4

**Other Authorities**

Fed. R. Civ. P. 44.1, advisory committee notes (1966) .................................. 6

**Rules**

Fed. R. App. P. 29(b) ..................................................................................... 2

Fed. R. App. P. 29(b)(2) ............................................................................... 11

Local Rule 30.1(a) .......................................................................................... 4

Local Rule 31.2(d) .......................................................................................... 3

**Treatises**

16A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* §
  3975.1 (3d ed. 1999) ................................................................................... 4

4 Am. Jur. 2d *Amicus Curiae* § 8 (2014) ...................................................... 5

## PRELIMINARY STATEMENT

Chevron Corporation ("Chevron") opposes the motions of non-party the Republic of Ecuador ("ROE") seeking permission to file an *amicus curiae* brief, purporting to be "in support of neither party" (Dkt. 112), but without question submitted on behalf of the Defendants-Appellants, and requesting that this Court take judicial notice of an appendix containing hundreds of pages of irrelevant documents outside the record (Dkt. 113). The ROE's motions are untimely and fraught with procedural errors. The Clerk of the Court already rejected the ROE's motions as deficient, but granted the ROE a second opportunity to file papers that complied with the rules, imposing a July 1, 2014 deadline. Dkt. 79. July 1 came and went, however, and the ROE failed to re-file its motion (or offer an explanation why it felt it could ignore the Clerk's order).

The ROE's motions are, moreover, an improper and belated attempt to challenge the district court's factual findings with "evidence" concerning the inner workings of Ecuador's judiciary and the credibility of Chevron's witnesses at trial. But the ROE sought *and was granted* leave to intervene in the action below on the eve of trial to raise only narrow privilege issues on which it largely prevailed, but never sought to intervene regarding any of the issues or evidence it now belatedly seeks to inject into this appeal. And the proposed *amicus* brief and appendix also fail to provide any insight into the issues before this Court, because, just like the

1

parties on appeal, the ROE does not even attempt to identify any clear error in the district court's factual findings, nor would it be possible to do so on this record. The ROE's attempts to invoke evidence no one put before the district court and attacks on Chevron witness credibility are thus irrelevant to any issue properly before this Court.

Accordingly, the Court should deny the ROE's motions. In the alternative, and at the very least, the Court should strike the ROE's appendix.

## ARGUMENT

### I. The Motions Are Procedurally Improper

#### A. The Motions Are Untimely

On June 24, 2014, the ROE filed a motion for leave to file an oversized *amicus curiae* brief. Dkt. 75-1. The ROE failed to attach its proposed brief to its motion, however, as the rules require. *See* Fed. R. App. P. 29(b) ("The motion *must* be accompanied by the proposed brief [.]" (emphasis added)). In light of this deficiency, on June 27, 2014, the Clerk ordered the ROE to re-file its motion and accompanying brief by July 1. Dkt. 79. The ROE ignored that order and did not seek an extension or otherwise explain why it would not be re-filing its motion pursuant to the deadline.

Instead, seven days later, on July 8, the ROE filed its motion and proposed *amicus curiae* brief. Dkt. 112. The ROE states without citing any order or docket entry that the Clerk "advised the Republic to file a single motion for leave to file

2

an oversized brief as *amicus curiae*, along with the brief, simultaneously when due, i.e., today," which the ROE takes to mean July 8. Dkt. 112-1 at 1 n.1. But the Clerk's order stated that the due date was July 1, not July 8. The ROE's failure to re-file its motions and *amicus* brief within the ordered time period is reason alone to deny them. *Cf.* Local Rule 31.2(d) ("The court may dismiss an appeal or take other appropriate action for failure to timely file a brief or to meet a deadline under this rule.").

> **B.    The Proposed *Amicus* Brief and Appendix Improperly Seek to Introduce Arguments and Evidence Not Before This Court**

The ROE's brief is also procedurally deficient in that it seeks to put before this Court issues and arguments not raised below as well as to introduce evidence that is outside the record. In particular, the ROE seeks to challenge the district court's factual findings and weighing of evidence concerning the lack of impartial tribunals in Ecuador in politicized cases such as this one. *See generally* Dkts. 112-2, 113-2. These requests are improper and warrant denial of the ROE's motions.

> **1.    *Amici* May Not Raise New Arguments or Introduce Extra-Record Evidence on Appeal**

Parties and *amici* are generally not permitted to raise on appeal legal arguments not presented to the district court. For instance, in *Bano v. Union Carbide Corp.*, 273 F.3d 120 (2d Cir. 2001), *amici* tried to argue on appeal that the Indian government, in negotiating a settlement for victims of the 1980 Bhopal incident,

3

did not properly represent the interests of the victims. This Court rejected that argument solely "because it was raised by *amici*, not by the appellants themselves, and because it apparently was not raised by any party before the district court." *Id.* at 127 n.5 ("'In ordinary circumstances, an *amicus* will not be permitted to raise issues not argued by the parties.'") (quoting 16A Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3975.1 (3d ed. 1999))); *see also Olmstead v. Pruco Life Ins. Co.*, 283 F.3d 429, 436 n.5 (2d Cir. 2002) (noting that "an issue raised only by an *amicus curiae* is normally not considered on appeal"); *Universal City Studios, Inc. v. Corley*, 273 F.3d 429, 445 (2d Cir. 2001) ("Although an amicus brief can be helpful in elaborating issues properly presented by the parties, it is normally not a method for injecting new issues into an appeal, at least in cases where the parties are competently represented by counsel.").[1]

Further, it is well settled that parties—not to mention *amici*—cannot generally add to the record on appeal. This Court limits the contents of an appendix to materials in the record below. Local Rule 30.1(a) ("The contents of an appendix are *limited* to the materials set forth in FRAP 30(a)(1) . . . ." (emphasis added)).

---

[1] *See also FTC v. Phoebe Putney Health Sys., Inc.*, 133 S. Ct. 1003, 1010 n.4 (2013) ("Because this argument [raised by *amici*] was not raised by the parties or passed on by the lower courts, we do not consider it."); *Bogle-Assegai v. Connecticut*, 470 F.3d 498, 504 (2d Cir. 2006) ("[I]t is a well-established general rule that an appellate court will not consider an issue raised for the first time on appeal.") (citation omitted).

4

And this Court has made clear that it "will not consider rulings or evidence which are not part of the trial record" and "will not speculate about the proceedings below, but will rely only upon the record actually made." *Int'l Bus. Machs. Corp. v. Edelstein*, 526 F.2d 37, 45 (2d Cir. 1975); *see* 4 Am. Jur. 2d *Amicus Curiae* § 8 (2014) ("[T]he brief of an amicus curiae, or attachments thereto, cannot be used as a vehicle to present additional evidence or new evidence to an appellate court.").

### 2. The ROE Seeks to Raise New Issues on Appeal and Offer Evidence Never Presented to the District Court

The ROE openly seeks to do precisely what the rules prohibit:

> [T]he Republic intends to provide critical information the District Court either did not know or otherwise chose to disregard regarding the Ecuadorian legal processes, including a discussion of relevant Ecuadorian laws and procedures, the appellate processes, the independence of the Ecuadorian judiciary, and biases in the evidence on which the District Court relied for its criticisms of the Ecuadorian judiciary.

Dkt. 112-1 at 3. Some of this purportedly "critical" information that the ROE intends to introduce through its improper appendix includes articles about the state of the Ecuadorian judiciary (*e.g.*, RA 83–95, RA 117–124), along with Ecuadorian court orders (*e.g.*, 363–371, RA 383–398) and Ecuadorian referendum decrees and results (*e.g.*, RA 321–332, RA 402–407), most of which are not in the record below.

If the ROE believed these arguments and this evidence were somehow relevant or important to the district court proceedings, it should have sought to inter-

5

vene below or to otherwise submit these materials in accordance with Federal Rule of Civil Procedure 44.1, which sets forth the procedure for raising issues about a foreign country's law. But the ROE opted not to intervene to file such a request with the district court at any point, even though it in fact sought and was granted leave to intervene just before trial to assert privilege over certain documents. *See* No. 11-cv-0691 (S.D.N.Y.), Dkt. 1545 (granting ROE's motion to intervene "to assert privilege with respect to the documents obtained by Chevron from Margaret Petito . . . ").[2] It now seeks to circumvent these rules by requesting "judicial notice" of these arguments and evidence for purposes of appeal. Yet that is exactly what the drafters of Rule 44.1 sought to avoid. *See* Fed. R. Civ. P. 44.1, advisory committee notes (1966) (explaining that Rule 44.1 "refrains from imposing an obligation on the court to take 'judicial notice' of foreign law because this would put an extreme burden on the court in many cases; and it avoids use of the concept of 'judicial notice' in any form because of the uncertain meaning of that concept as applied to foreign law").

    The ROE offers little explanation for its attempted end-run around Rule 44.1 and the district court proceedings. All the ROE can do is claim that it had stayed

---

[2] The ROE also sought in December 2012 to appeal a discovery order issued in this action, which it claimed infringed on its "sovereign immunity." No. 11-cv-0691 (S.D.N.Y.), Dkt. 670. This Court dismissed the ROE's improper interlocutory appeal for lack of jurisdiction. *See* No. 12-5005 (2d Cir.), Dkt. 97.

out of the proceedings below "because it did not believe it had any direct interests to state," but then also claim that the district court "took advantage of the absence of the sovereign's input to construe differences between the Ecuadorian and U.S. judiciaries as evidence that the former is deficient." Dkt. 112-2 at 9; *see also id.* at 9 n.2 (arguing that the ROE "would have expected an invitation to provide an *amicus* submission to the District Court if the integrity of its judiciary were at issue"). The notion that the ROE was somehow caught off guard by the district court's ruling is belied by the ROE's own actions, the record in this case, and common sense. Indeed, the ROE's plea of ignorance borders on bad faith.

On the eve of the trial, the ROE informed the district court that it had been following the case, that it knew what issues were in dispute, but that it had "not previously moved to intervene in this case because up until October 7, 2013, the Republic had no certain interest requiring its intervention in this dispute between Chevron and the Defendants." No. 11-cv-0691 (S.D.N.Y.), Dkt. 1528 at 1. At that point, the ROE successfully intervened in order to assert claims of privilege and confidentiality over certain documents made available to Chevron by a third party. *See* No. 11-cv-0691 (S.D.N.Y.), Dkt. 154. But even then, less than a week before trial and while it was actively litigating in the district court, the ROE made no effort to offer any evidence or argument regarding the quality of its judiciary or the credibility of Chevron's witnesses.

7

Nor did the ROE petition the district court for reconsideration or otherwise challenge the findings in the 485-page decision addressing the fairness of Ecuador's courts and Donziger's leveraging of the widespread corruption in Ecuador to extort Chevron. *See Chevron Corp. v. Donziger*, 974 F. Supp. 2d 362, 608–17 (S.D.N.Y. 2014). Thus, the time for the ROE to seek to make these arguments, and to introduce any "evidence" on this topic, has long passed. *See Bano*, 273 F.3d at 127 n.5; *Crawford v. Lungren*, 96 F.3d 380, 389 n.6 (9th Cir. 1996) ("The district court is not merely a way station through which parties pass by arguing one issue while holding back a host of others for appeal.").

Moreover, public statements by ROE officials, including President Rafael Correa, show that the ROE has been monitoring the case closely, has stayed abreast of the issues, and has deliberately chosen not to enter the fray until now. *See*, *e.g.*, Ex. A (Nov. 5, 2013 statement of Nathalie Cely, Ecuador's Ambassador to the United States, describing the RICO trial and explaining that Chevron "allege[s] that there was corruption with respect to the—to the trial and the judgment that was handed down in Lago Agrio in this case," and that "we [the ROE] aren't a party to the case, but nevertheless we were forced to intervene, to move to intervene" to assert privileges over documents). In fact, four days after the district court issued its decision, President Correa went on the air and decried the ruling: "It isn't a final judgment. They can appeal. Because that judge, Judge Kaplan,

was completely biased. What's striking is that they even implicate the Ecuadorian government." Ex. B (Mach 8, 2014 statement of Rafael Correa, President of Ecuador, on the Ecuadorian presidential network).

On this record, the ROE's current attempt to paint itself as an *amicus* "in support of neither party" (Dkt. 112-1) is not credible. The ROE has previously asserted a "common interest relationship" and "joint defense agreement" with the Lago Agrio Plaintiffs ("LAPs") (No. 2:10-mc-00208-JD (E.D. Pa.), Dkt. 24 at 3, 8) and has brought discovery actions pursuant to 28 U.S.C. § 1782 in parallel with the LAPs.[3] And in other related discovery proceedings, the ROE intervened to oppose Chevron's discovery efforts, including those seeking documents and testimony from Donziger and related entities. *See, e.g.*, No. 10-MC-00002 (S.D.N.Y.), Dkt. 113; *see also* No. 2:10-mc-00208-JD (E.D. Pa.), Dkt. 24; No. 1:10-cv-00047-MSK-MEH (D. Colo.), Dkt. 39.

The ROE has actively lobbied against Chevron, waging a vigorous campaign that includes paying for press releases and hiring protesters in support of the LAPs and the $9.5 billion fraudulent Lago Agrio judgment.[4] In addition to a barrage of

---

[3] *See, e.g., In re Carrion*, No. 11-mc-80110 CRB (NC) (N.D. Cal.); *Republic of Ecuador v. Bjorkman*, No. 1:11-cv-01470-WYD-MEH (D. Colo.).

[4] On July 9, 2014, it was confirmed through documents released by the U.S. Department of Justice that the ROE hired the public relations firm MCSquared to issue press releases about the district court's opinion below and to help stage protests outside Chevron shareholder meetings. *See, e.g.*, Megan R. Wilson,

9

attacks by President Correa on Chevron, its lawyers, and anyone who supported or even failed to criticize the company,[5] the Ecuadorian state-owned newspaper *El Telégrafo* attacked lawyers and experts associated with Chevron in an article published just a month before the trial in this action, listing their names and accusing them of being "collaborators" with Chevron who sought to "'suffocate' Ecuador." No. 11-cv-0691 (S.D.N.Y.), Dkt. 1451-9.  Moreover, one of Chevron's expert witnesses, lawyers working for Chevron, and others were also identified by name, picture, and by the number of their government-issued identification card ("cédula") on a web site accusing those associated with Chevron of selling out their country, called "Los vendepatria," a Latin American colloquialism for "traitor" that translates to "sellers of the fatherland." No. 11-cv-0691 (S.D.N.Y.), Dkt. 1484-2.[6]

In light of this record, the Court should not excuse the ROE's failure to raise

---

*Ecuador's Eye-Popping PR Deal Revealed*, The Hill (July 10, 2014), http://thehill.com/business-a-lobbying/lobbying-contracts/211938-ecuadors-eye-popping-pr-deal-revealed.

[5] *See, e.g.,* No. 11-cv-0691 (S.D.N.Y.), Dkt. 1451-8 (President Correa, in a September 14, 2013 interview (one month before trial in this action), claiming that the ROE is "responding to that slur that was leveled against us by that multinational Chevron around the world" and asking "[h]ow much did the traitors collaborate in this, how much did the media collaborate, who conspired against the Government, right? They're giving ammunition to those international enemies our country has."); *Chevron Corp. v. Donziger*, 974 F. Supp. 362, 450 (S.D.N.Y. 2014) ("President Correa took to the radio on April 28, 2007, denouncing the 'homeland-selling' lawyers defending Chevron–Texaco, 'who for a few dollars are capable of selling souls, homeland, family, etc.[] …'").

[6] *See* Los vendepatria, Galería, http://www.losvendepatria.com/category/galeria/.

these issues or to seek to introduce its evidence below on the basis that the ROE was somehow caught unaware by the district court's findings about the impartiality of Ecuador's judiciary.

II.    **The ROE's Proposed *Amicus* Brief Fails to Address Issues Relevant to the Issues on Appeal**

The ROE's motions should be denied for the additional reason that the proposed *amicus* brief and appendix are not an attempt to assist the Court with the issues before it, but are instead the attempt of a non-party to bring a direct appeal of certain findings that the Defendants themselves do not claim are clearly erroneous, and which the ROE has not identified as clear error.

Federal Rule of Appellate Procedure 29 requires motions for leave to file an *amicus* brief to state "why the matters asserted [in the *amicus* brief] are relevant to the disposition of the case."  Fed. R. App. P. 29(b)(2).  The ROE fails to provide such an explanation.  And the substance of its brief shows that rather than assist the Court with the issues on appeal, the ROE is making a thinly-veiled effort to obtain specific relief from this Court as if it were a party to the appeal, which it is not.

Despite asserting that it intends only to "address its concerns to this Court," Dkt. 112-1 at 3, the ROE's *amicus* brief purports to attack the factual findings of the court below on the basis that those findings "impugn the integrity of the [ROE] and its courts."  Dkt. 112-2 at 1.  The ROE then asks this Court to do something that goes far beyond the issues or relief sought in this appeal, namely, to "order

11

stricken from the opinion below all statements about the Ecuadorian judiciary or otherwise make clear that the quality and quantity of evidence do not support the District Court's extraordinary findings regarding the Republic and its judiciary." Dkt. 112-2 at 3; *see also id.* at 41 (asking that the district court's findings about the Ecuadorian judiciary "be declared improper and stricken from [its] opinion"). But the Defendants have not sought such relief or challenged the district court's findings on the impartiality of Ecuador's judiciary as clearly erroneous. *See* Dkt. 101 at 4 (Donziger's statement of issues on appeal); Dkt. 83 at xiv (LAPs' questions presented).

The ROE is not a party in this appeal and therefore is not entitled to ask for or obtain such relief. *See Sony Corp. of Am. v. Universal City Studios*, *Inc.*, 464 U.S. 417, 434 n.16 (1984) ("The stated desires of *amici* concerning the outcome of this or any litigation . . . are not evidence in the case [] and do not influence our decision; we examine an *amicus curiae* brief solely for whatever aid it provides in analyzing the legal questions before us."). Having failed to make any effort below to have its position heard or evidence considered, including through attempting to intervene, the ROE cannot now do so now through an *amicus curiae* brief and a request for judicial notice of extra-record evidence. *Cf. Marino v. Ortiz*, 484 U.S. 301, 304 (1988) ("[W]e hold that because petitioners were not parties to the underlying lawsuit, and because they failed to intervene for purposes of appeal, they may

12

not appeal . . . . The rule that only parties to a lawsuit, or those that properly become parties, may appeal an adverse judgment, is well settled." (citation omitted)). Rather, the ROE's role here must be limited to "help[ing] elaborate[e] issues properly presented by the parties." *Tiffany (NJ) Inc. v. eBay, Inc.*, 600 F.3d 93, 105 n.10 (2d Cir. 2010) (declining to consider an argument raised by *amici* but abandoned by a party, and noting that an *amicus* brief "is normally not a method for injecting new issues into an appeal") (internal citation and quotation marks omitted).

And in any event, even if the ROE could pursue its own appeal, the ROE's attacks on the "quality and quantity of evidence" supporting the district court's findings about Ecuador's judiciary (Dkt. 112-2 at 3) do not acknowledge, let alone attempt to satisfy, the clear error standard of review that would govern review of such findings. *See*, *e.g.*, *Mobil Shipping & Transp. Co. v. Wonsild Liquid Carriers Ltd.*, 190 F.3d 64, 67 (2d Cir. 1999) (explaining that "[o]n appeal from a bench trial, the district court's findings of fact are reviewed for clear error," and the appellate court can reverse those findings only if it "is left with the definite and firm conviction that a mistake has been committed") (internal citations and quotation marks omitted); *see also Newman v. Local 1101, Commc'n Workers of Am., AFL-CIO*, 597 F.2d 833, 836 (2d Cir. 1979) ("[A]lthough there was conflicting evidence with respect to some issues, [the district judge's] key findings, being supported by

13

evidence found by him to be credible, cannot be labeled clearly erroneous . . . .") (citation omitted).

Likewise, the ROE's challenges to the district court's credibility determinations—in particular as to the testimony of Dr. Vladimiro Xavier Álvarez Grau, *see* Dkt. 112-2 at 22–28—fail to account for the degree of deference given to such findings on appeal. *See Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985) ("When findings are based on determinations regarding the credibility of witnesses, Rule 52(a) demands even greater deference to the trial court's findings; for only the trial judge can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding of and belief in what is said.") (citation omitted). As this Court has stated: "We are not allowed to second-guess the bench-trial court's credibility assessments." *Krist v. Kolombos Rest. Inc.*, 688 F.3d 89, 95 (2d Cir. 2012) (citing *Anderson*, 470 U.S. at 573-74).

## CONCLUSION

For these reasons, Chevron respectfully requests that the Court deny the ROE's motions for permission to file an *amicus curiae* brief and for judicial notice of its appendix contents. In the alternative, the Court should at least strike the ROE's appendix.

Dated: July 21, 2014
New York, New York

Respectfully submitted,

 /s/ Theodore B. Olson
GIBSON, DUNN & CRUTCHER LLP

Theodore B. Olson
1050 Connecticut Ave., N.W.
Washington, DC 20036
Telephone: 202.955.8500
Facsimile: 202.467.0539

Randy M. Mastro
Andrea E. Neuman
200 Park Avenue
New York, New York 10166
Telephone: 212.351.4000
Facsimile: 212.351.4035

William E. Thomson
333 South Grand Avenue
Los Angeles, California 90071
Telephone: 213.229.7000
Facsimile: 213.229.7520

*Attorneys for Chevron Corporation*